I'll give you all a moment to clear your spots. Case number is 22-2182. All right. Counsel, you've reserved two minutes for rebuttal. You may begin whenever you're ready. Thank you, Your Honor, and good morning, and may it please the Court. The first time this case was before this Court, it established the level of reasonable suspicion required for a visual body cavity search. A visual body cavity search occurs when an arrestee is required not only to strip naked, but also to expose the most private parts of their body to the officer, often in a degrading and humiliating position. That's what happened to Mr. Sloley in this case. Officer Van Bremer brought him to a back room of the police barracks, required him to place his hands against the wall, and remove each article of his clothing and pass it back to the officer one by one. And when he was completely naked, the officer further required him to bend over, reach back, and spread his buttocks so that the officer could do a visual inspection of his anus. In Sloley 1, this Court created a bright-line rule that this search required reasonable suspicion of drugs inside Mr. Sloley's body. But on remand at trial, the district court did not tell the jury that bright-line rule. Instead, it told the jury that the relevant question was whether Van Bremer had reasonable suspicion that Sloley had drugs in or on his person. Does the record reflect whether this trial judge gave the jury a written copy of its instructions? It does, Your Honor, and the judge did. The government requested that the jury have a copy of the charge, and so the two documents the jury had in the verdict room were the verdict form, Court Exhibit 1, and the jury instructions, Court Exhibit 2. And so twice they had both the instruction on their way out the door that they were to find this, and they had the written instruction with them. Did the trial judge tell the jury the relationship between the jury form and the charge? There was no instruction about the relationship between the jury form and the charge exactly. After the Court finished the charge, the Court told the jury, we'll send you back now to the jury room, with you is going to be a jury form. There's going to be questions on it. There will be some preliminary instructions at the top of the questions that we hope will be helpful to you. But there was no other explanations between the jury form and the charge. The jury instructions, however, say at the top, you must decide the case based off the law that I'm about to tell you. And that law was a misstatement of the law that this Court established and slowly won. What do you do with their answer to the specific question that they were given? Juries answer those questions, Your Honor, based off the instructions of the law that the Court told them. So the two documents they had in front of them were, one, basically saying liability, yes or no, check yes or no, and then the Court's instructions that they had just delivered orally, and they had in front of them in writing, that said, this is the law that you are required to apply in this case. But they answered what you say as to the law. They answered as to a fact question. Has the plaintiff proved by a preponderance of the evidence that Van Brammer subjected him to a visual body cavity search without reasonable suspicion? And they said no. And they said no only after the jury, the judge had instructed them that the relevant question when answering that key question of liability was whether or not he had reasonable suspicion of drugs. But they didn't answer what you say was the key question. He wrote out a different question on the verdict form. Your Honor, in our brief— There's no in or on in that question. It's not in or on in the verdict form, but the Court instructed the jury what the relevant question was when answering the questions on the verdict form. The Court told them the relevant question here is whether or not there was reasonable suspicion in or on. Well, he said that on one occasion. On two other occasions, he said in, didn't he? In one occasion, he said in or on. Earlier in the charge, the Court is giving the explanation of both search and verdict. This whole business of on, when you say on his person, if you say to somebody, do you have drugs on your person, that doesn't mean in his anus, does it, or even near it. It means did you tuck it in your pocket, in your shoe. That's what on a person—if you have drugs on your person, we don't mean in your buttocks. We mean somewhere on your—that's not this case. This case has nothing to do with drugs on a person. That's exactly right, Your Honor, and that's why it was— So why are we worrying about it when we've got a specific jury question and say, no, he didn't lack probable cause, reasonable suspicion, as to drugs inside his body cavity. That's the question they got, and they answered it. That's the question presented on the verdict form, Your Honor, but it's not the question the Court had just instructed them. It's the relevant question in the case. So you mean they looked at this question and they said, he wants us to say yes or no, but that's not really the question. We should go back to something he said in the instruction. Isn't that almost insulting to a jury? They got a specific question. It's perfectly clear. They answered it. Why doesn't that end the case? Not at all, Your Honor. In this case, we have an objective to jury instruction, and so the standard is whether or not this Court can be confident that the jury's verdict wasn't influenced by the misstatement of the law in the jury instructions. And you can imagine very easily a jury going back and looking at this form and saying, oh, inside his body. I don't think there was any evidence that he had reasonable suspicion that he found it inside his body. And one of the other jurors saying, wait, but we also have the jury instructions here, and it says at the top that we are to use these instructions to make our determination. And here it says that if he had reasonable suspicion in or on, he was allowed to perform this search under the Constitution. That's the exact question that this Court answered in the negative in Solely 1. And what about the combination of factors here? So we have the fact that there's this confusion about whether there's a strip search claim, right, as opposed to a visual body cavity search. We have the negligence, which could lead you to this confluence where you think the jury might say, I don't know, I think your argument is the jury might say negligently searched the cavity instead of the exterior of his body. But can you talk for a minute about, as opposed to just that one place where he says in or on, how do you argue that this confluence would overcome the direct question Judge Newman points to in the form? So the jury's hearing this, Your Honor. They're hearing first the instruction that the relevant question here, what you are to decide. Yes, they've just heard some sort of general principles of Fourth Amendment law and the standard for both a strip search and arguably not on trial and a visual body cavity instruction. But then the jury's told the question you are to answer, the relevant question for you, is whether or not in the totality of the circumstances it was reasonable suspicion in or on. And immediately after that, the court transitions into the negligence instruction, completely inapplicable to this case. A negligence instruction, it is true that a 1983 claim can arise from near negligence, but that is if the actions that are the subject of the claim are potentially negligent. There is no question that Van Bremer intended to perform a strip search and then a visual body cavity inspection of Mr. Slowly. He didn't tell him to turn around and bend over accidentally. So it confuses the two because you can, again, imagine a jury saying, well, even if I think that maybe there wasn't enough reasonable suspicion for in and on, a purely objective standard, he was probably just negligent if he did think there was enough for him to do this. I don't think he was a bad guy. He didn't do it on purpose. You're saying they could have thought that the officer was negligent and found him, and exonerated him for lack of negligence? Because of the instruction that the court added about negligence not being a basis for liability, the jury could have been confused to think. He didn't just say negligence is not a basis for liability, period. What he said was if you determine that he was merely negligent but he did not in any way violate the plaintiff's Fourth Amendment as described above, then you must find in favor of the defendant. So the negligence only came in if he did not violate and they said he did violate the Fourth Amendment in their specific answer to the interrogatory. Your Honor, it's possible that the jury understood that. I find it pretty confusing, but this court has to What's confusing about it? It says clearly, but he did not in any way violate the Fourth Amendment rights. There is a subclause that says in any way he didn't violate the Fourth Amendment rights, but it's prefaced by the instruction that negligent conduct is not liable, and the subsection of the jury instructions is titled But it's all one sentence. It's not as if he said, look, here's a negligent standard. You go out and worry about negligence and then also worry about Fourth Amendment. He put it all together quite correctly. He said if you determine that he was merely negligent but did not violate the Fourth Amendment, he put it all together. What could be clearer? I think it's still very confusing to the jury, Your Honor, because it doesn't – there is no possibility in this case where the jury could find for Mr. Van Bremer because they concluded he was merely negligent because there's no question that his actions, which is all that is at issue I agree with you that negligence really isn't in this case. I agree with that. So that's what makes it confusing. Why am I worrying about it? Because you're introducing something to the jury that they have to consider when it's inapplicable to this case. It makes the jury instructions as a whole confusing. But not in isolation. If he had just said, go back and think about whether he is negligent, period. They didn't do – he didn't do that. It might be a harder case, Your Honor, if it was only a negligence instruction in isolation. But in this case, as in every case, you look at the jury instructions as a whole. The negligence instruction – That's what I'm inviting you to do, to look at this sentence as a whole because it is a whole. It's one sentence. You have, Your Honor, at least two errors or confusing instructions in the jury instruction. What is the reasonable suspicion standard? The Court admittedly got that wrong. It says that it used the instruction from a prior case of this Court before it decided the issue and slowly won. Immediately afterward, it gave a negligence instruction over objection when negligence had no factor in this case. We keep calling it a negligence instruction as if that stands in isolation. But it doesn't. Your Honor, the subsection – the jury had the written form. And the subsection here is titled Negligence is not a basis for liability. That's not true in this case. And I understand and I appreciate that the sentence itself does say that if he did not in any way violate the Fourth Amendment. But that's the only case. That's the only question in the case. It's an objective standard. So by interjecting negligence and intent when it's completely inapplicable to this case, right after misstating this Court's clear, bright-line rule from slowly won, you have to be confident that the jury did not reach confusion here because there was an objection below. If this was plain error review, maybe it's a harder case. But in this case, you can't be confident that the jury understood all of this in reaching its verdict. Thank you, counsel. You've reserved some time for rebuttal. We'll hear from Mr. Brody. May it please the Court, Frederick Brody for appellee. This Court should affirm the judgment for State Trooper Eric Van Bramer. The verdict form clarified any potential confusion caused by the jury instruction on searches. How do we know that? Well, the verdict form accurately reflected this Court's prior decision, which I'll call slowly won. It asked whether Eric had conducted a visual body cavity search without reasonable suspicion to believe that Slowly had hidden evidence inside of his body cavity. What was the jury to do given that question in light of the previous instruction that the judge had given, which the judge cautioned the jury I think on two, if not three, occasions that you must follow these instructions as I give you, whether you agree with them or not? Well, there was no conflict between the verdict form and the instructions. The claimed error in the jury instruction, and I'll get to whether it was really an error, but the claimed error would not have affected the finding of fact in the verdict form. Claimed error was challenged instruction said in or on his person. Now, inside of his body cavity is a subset of in or on his person. Jurors are often asked in interrogatories specific questions that are subset, subsection, subsets of the general question that they're supposed to be considering. Wait, you're saying the in or on both refer to the body cavity? Is that what you just said? No. I'm saying there's a challenged portion of that instruction that said in or on. And the question, and so in would have been the body cavity, on would have been somewhere else on his body. But the judge conceded that that was wrong, did he not? I think, I don't think we're bound by that concession. That's not what I asked you. The judge conceded that it was wrong. He conceded that it was technically inaccurate, but harmless. The judge just got all confused and incorrectly conceded that the charge he had just given was wrong? No, he said it was harmless error. But are you now arguing that that instruction was not wrong? No, I'm arguing that that phrase, in or on, it should have said in or it should have said in or on, respectively. So it was wrong. That was an error, but it was harmless. The judge agreed it was wrong. That in or on. Have I missed something? No, it should have said in, but the judge went on to find that the error was harmless. Counsel, were you trial counsel? I'm sorry. Go ahead. Were you trial counsel? No, I was not. Were you assisting trial counsel? No. Were you in the courtroom? No, I'm dealing with the record. I'm an appellate lawyer. You're far away from this charge. It's plausible that I know it. I see. Because what I find hard to understand is why government counsel, when there was an objection to the in or on, didn't say, Your Honor, he's right. This is an in case. This is a non case. And it isn't an either or case. It's an in case. Well, I can explain that. Oh, go ahead. You know, the instruction began by stating the instruction had to deal with both in and on. It had to deal with body cavity and because the parties disputed whether Eric conducted a body cavity search at all. They disputed what kind of search he conducted. But you don't dispute that from this record, do you? Yeah. This wasn't a body cavity search? Absolutely. Eric Van Bremer testified that he did not look inside plaintiff's anus. Why did he have him spread his buttocks if he didn't wasn't interested in looking at it? Because he reasonably suspected that there were drugs concealed between the buttocks. He only looked at the buttocks. How could he determine that without looking? Well, there you go. If you look between the buttocks and many, many, many human beings, you see an anus. Well, he looked between the buttocks, but he didn't look inside the anus. He was standing three to four feet away. That's on page 498 of the record. So he only wants to see, are there drugs between the buttocks? How do you know that? Because he testifies. He testifies on 371. If you look, if he looks, you don't know what he's seeing. If he looks between the buttocks, you typically, most people, you'll see an anus. Right. But he doesn't look in the anus. Our prior decision says, quote, slowly was subjected to a strip search and visual body cavity search. So that is in our prior decision in slowly one. But we're now going to find that that didn't happen. Well, the prior decision was on summary judgment. Slowly asserted that he was subjected to a strip search and body cavity search. On summary judgment, we had to accept that. But then they have a trial. At trial, Eric Van Bramer testifies he didn't look inside plaintiff's anus. That's on 371, 497, 498, and 499. He's standing three to four feet away, so he can't see in the anus. That's 498. The gap between the buttocks. He can't see the anus? He can't see in it. He can't see the cavity that's in there. He can see it exists, but he can't see inside. Why not? Because he's three to four feet away. I mean, I'm replicating the experiment in my head. Three to four feet away. I mean, it's not as if he's across the room or something. Three to four feet away, I don't see how that helps you, that he's so close. I — well, you know, the jury gets conflicting evidence. Eric testifies, I didn't look in the anus. All I did was examine the exterior between his buttocks to see if there were any drugs there, and the search took seconds. That's 498. It took seconds. Now, jury believes that. The ex — that's an interesting phrase, the exterior between his buttocks. Right. The area between the buttocks is not a body cavity. It's like an armpit. It's ordinarily concealed, and, you know, you could be concealing drugs in your armpit. There's no cavity behind the armpit, but there is a cavity behind Fred's buttocks. Right. And he doesn't look in the cavity. You know, if a doctor — I mean, he says, I only looked two feet away. I didn't look three feet away. Is that the theory? No. The theory is that he needs to see if there are drugs concealed within Slowly's — between Slowly's buttocks. He doesn't look further inside the anus. He just says, spread your buttocks. Slowly does that. There's no drugs. Search is over. There are no — It's a remarkable eye control to be able to look at the spread buttocks but stop your vision at the last three inches before your vision sees the anus. Well, you know, when a doctor is examining your anus, he's got a — he's way up close. He's got a flashlight. That doesn't happen here. There's no close examination of the cavity. It's the absence of a flashlight that makes it not a cavity search? No. It's — what makes it not a cavity search is Eric Van Bramer's testimony, which the Court must credit, looking at the evidence in the light most favorable to the verdict, that he did not look inside the body cavity. He only looked at the exterior of the skin between the buttocks. He found no drugs there in seconds, and that was it. But he looked at the anus, right? No. He looked between the buttocks. He did not go for — Well, if you look between the buttocks, you see the anus, counsel. He saw — he must have seen that the anus existed, but he didn't look in the cavity. We were born at night, but we weren't born last night. You know, another body cavity perhaps more comfortable to discuss is the mouth. You can see I have a mouth, but you're not looking in it. So you look at the suspect's head. You see he has a mouth, but you haven't searched the body cavity within the mouth. Same thing here. He looks between the buttocks for drugs, and there's no question that he had reasonable suspicion to do that. But he doesn't go further and look inside the body cavity, which is the anus. Again, the area between the buttocks, not a body cavity. Can you help me understand this? Counsel made an objection to this charge. Does the judge explain why he wouldn't give any — a curative instruction would take a minute. Does the judge explain why he didn't give a curative instruction here? Well, he's not asked to give a curative instruction. He's objected to, so — It's objected to. He conceives that what he said was incorrect. Is it not at that point incumbent on him just to clear it up? Well, it's objected to at the charge conference. Right. And he rejects the plaintiff's argument, and he says, no, we're going to say in or on. I'm sorry. He says no, basically. He doesn't — He doubles down at the charge conference on a charge he knows is an incorrect statement of a law. No. He only says that it's an incorrect statement after the post-trial motions. So the first time it comes up is the charge conference.  He says, no, I'm charging it as it's written. And then it comes up again in post-trial motions, and post-trial motions he says, okay, I was wrong, but it was harmless error. Does he say — does he give any indication about when he realized it was wrong? He doesn't say when he realized it was wrong. So, you know, one assumes he realized it was wrong when he was writing the opinion on the post-trial motions. Counsel, the only difficulty I have with your argument is why you are trying to tell us he didn't look at the amendments when the jury says he didn't. Well, I mean, that was what I started out with, Your Honor, is that you thought — No, we pushed you away from evidence. Well, no. You know, the jury verdict for him, finding the fact, as Your Honor pointed out, that he — did he conduct a visual body cavity search without reasonable suspicion? And they said no. Right. And no could mean he didn't conduct a visual body cavity search. And that's a reasonable interpretation of what the jury found. No could also mean that he didn't have reasonable suspicion — that he had reasonable suspicion. But you think their answer means he didn't? They found he did not conduct a visual cavity search? Well, again, it's a compound question. Did he conduct a visual body cavity search without reasonable suspicion to believe that Slowly had hidden evidence inside of his body cavity?  Jury answers no. Could mean he didn't conduct a body cavity search at all, based on Eric Van Bramer's testimony. Or it could mean that he had — that Eric Van Bramer had — did conduct a body cavity search, but he had reasonable suspicion. And there was certainly evidence of reasonable suspicion. And your theory is you win either way? We win either way. And I would point out that in Slowly won, in the Court's prior opinion, it found a triable issue of fact on whether Officer Van Bramer actually found cocaine in the car or not. So he testifies here. He finds cocaine in the car. So there's certainly evidence that under this Court's prior opinion would support a visual body cavity search. Whoa, whoa, whoa. That — your connection is that if I'm in a car and there's reasonable — if there's drugs found in the car, that is per se sufficient to support a visual body cavity search? No. There's a whole bunch of factors. I think that's what you just said, but — No. No, no, no. I'm going back to the prior opinion. No, I understand. It said, you know, there's issue of fact whether he found cocaine at all, whether he made up the whole thing. Right. And there's extensive testimony by Eric Van Bramer. He didn't make it up. Right. Here's what I did. Here's how I investigated. But this Court's opinion indicated, or at least to me, his verdict of the judgment would have been different otherwise, that you have to go back because there's a disputed issue of fact precluding summary judgment as to whether he finds cocaine in the car. Okay. He establishes he finds cocaine in the car. That means that there should have been reasonable suspicion to conduct a visual body cavity search. You just made the same leap I just asked you about and you denied making, which is if there was cocaine in the car, there was reasonable suspicion to conduct a visual body cavity search. That's your position. Well, no, for the reason that there's a whole bunch of other evidence of reasonable suspicion.  So you're sort of giving me a shorthand. I'm giving you a shorthand. Let me ask you a question about the jury verdict question that you just pointed out, that it's possible the jury's finding was that Mr. Slowly loses because no visual body cavity search was conducted at all. But we defined visual body cavity search as Slowly won, relying on prior precedent to say that it simply involves observing and it describes the police observed the suspect's body cavity without touching them as by having the suspect bend over or squat and cough while naked. Is there any dispute in the record that that happened? No, there's no dispute in the record that they asked. But the jury couldn't have found on the evidence of this trial that no visual body cavity search was conducted. Well, they could have found that because Officer Van Bramer testified that he did not look inside. That's not the definition that we gave in Slowly won, which is observe the cavity without touching as by having the suspect bend over or squat and cough while naked. Right. But observe the cavity. He didn't look inside the anus. He didn't look at the cavity. The cavity is a hole like a mouth, and you can see my mouth, but you're not looking inside it. He's only an officer, not a proctologist. Is that what you're telling us? That is proof. That is proof. Well, I don't know how we're coming out, but I hope you will suggest to the lawyer who didn't attend this conference that when a language in a proposed charge, which is erroneous, he ought to speak up and help the judge get it right and not stand silent. Well, I mean, with the indulgence of the Court, I would like to say that the charge did get the language right when they're defining the two types of searches. The charge said exactly what Slowly won said, that it must be based on a reasonable suspicion that the arrestee is hiding evidence. In or on language. Defense counsel objected to the in or on language, didn't he, at the charge conference? Yes. Yes. And the State's lawyer said nothing. I think the State's lawyer said it was okay as is, and that, according to the trial judge, was error. Right. So I just hope you would suggest to him that at least some part of the panel thinks he would have been well advised to help the judge get it right and save you a lot of grief at your argument. Well, certainly trial counsel is aware that we wouldn't have this appeal if it had just said in and not in or on. That's right. And the State's lawyer was there to achieve that result and didn't do it. That doesn't mean it gets reversed, but it's just something that he ought to know he should have done. Fair enough? Fair enough. Thank you, Your Honor. All right. Thank you, counsel. You've reserved two minutes for rebuttal. Hi, Your Honor. Thank you. So just very quickly on the question of whether a visual body cavity search occurred. This court defined what that means in Slowly won. The facts very clearly established it happens here. The one thing I would add is I would point the court to the decision that is referenced in Slowly won, which is Gonzalez v. City of Shenectady. There, the exact same kind of search happens, but it reveals that someone did have drugs in their person, and it's because they saw the baggie that the drug was hiding protruding from the anus. That's why you do a search like this to see if somebody has put drugs into their body cavity, because you can see it just by looking. You don't need to look farther inside. If you go further, that becomes a manual body cavity inspection, which this court says in Slowly won requires an even heightened degree of reasonable suspicion. Let me hear your response to the jury verdict questionnaire that contended the jury verdict got it correct. I think there are really two important points here. One is the standard of review, because this was objected to at trial. So you're not asking for plain error. You're not asking if the misstatement on the jury instructions caused the verdict. You're asking if this court can be confident that it did not cause the verdict. Then when you look at the two documents that the court, the jury had with them in the verdict sheet, they had been instructed repeatedly that they were to follow the law as it was stated in the charge. It had the charge in front of them. It said you have to mace your decision on what I'm about to tell you. And then if they turned to the page where they were instructed on this, they would see an erroneous statement of law right there about what it was wrong. On the other page, they had a statement of law that was correct, but not one that they had been told to follow. They had been told it was just to guide their questions. The court had told them to follow what it was telling them. At minimum, you can't be confident. If it's a jump ball between those two documents, then this case has to get reversed and go to a new trial. And I don't think it's even arguably a jump ball, because the court told them which of the two documents to follow. It said, follow my charge. Don't follow anything else. I'm the one telling you the law here. I would just say one other thing quickly, judging on your questions. Just give us, you get 30 seconds. Okay. Thank you, Your Honor. I appreciate it. There's a tension, Judge Newman, I think, between saying that the jury could accurately parse the negligence instruction and understand what that clause meant and very carefully follow it without being confused, and then saying that they wouldn't have done the exact same thing and followed the letter of the instruction on the reasonable suspicion charge that came right before it. At minimum, the jury instructions as a whole were confusing and prejudicial, and I think that requires a new trial. Thank you. Thank you, everybody. Thank you, counsel. An unusually interesting case. We gave you both a hard time, but that's our job. And Mr. Spott, you and Mr. Schoenfeld took this case. Your firm is doing this pro bono. We are, Your Honor. Thank you for your – I know your firm is in the lead in this kind of activity, and we thank you. Thank you.